# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

**TRAE HAKEEM CRANDELL,**

    Petitioner,

v.

**R. HUDGINS, Complex Warden,**

    Respondent.

**Civil No.: 1:21-CV-63**
Judge Bailey

## REPORT AND RECOMMENDATION

This case is before the undersigned for consideration of *pro se* petitioner Crandell's ("petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, respondent's Motion and Memorandum to Dismiss or, in the Alternative, for Summary Judgement, and petitioner's Response in Opposition to Respondent's Motion. [Doc. Nos. 1, 16, 19].

### I.  Procedural History

On May 12, 2021, the petitioner filed a Writ of Habeas Corpus Under 28 U.S.C. § 2241. [Doc. 1]. On July 6, 2021, the petitioner paid the $5 filing fee. [Doc. 7]. On November 1, 2021, the undersigned ordered the respondent to show cause as to why the writ should not be granted. [Doc. 14].

On November 29, 2021, the respondent answered with a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a Memorandum in Support and exhibits. [Doc. 16]. A Roseboro Notice was issued to the petitioner by the undersigned on November 30, 2021, pursuant to Roseboro v. Garrison, 528 F. 2d 309, 310 (4th Cir.

1

1975), instructing the petitioner of his right to file a response to the respondent's Motion and Memorandum. [Doc. 17]. The petitioner filed a response with exhibits on December 20, 2021. [Doc. 19]. On December 21, 2021, the petitioner filed a supplemental document consisting of a limited portion of his federal sentencing transcript. [Doc. 20].

## II.     Facts

On November 13, 2018, the petitioner pleaded guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. 922(g) in the United States District Court for the Eastern District of North Carolina. At the time, the petitioner was in primary state custody awaiting pretrial proceedings on charges of robbery with a dangerous weapon and conspiracy to commit robbery. On March 5, 2019, the petitioner was sentenced in federal court to 60 months of imprisonment and three years' supervised release, but the judgment was silent regarding any relationship with the pending state proceedings. Following sentencing, the petitioner was returned to state custody and the federal judgment was lodged as a detainer.

On October 8, 2019, the petitioner was convicted of larceny from a person and sentenced in state court to an indeterminate term of 8 – 19 months imprisonment. The state judgment did not indicate whether the state court intended its sentence to run concurrent or consecutive to his federal sentence. Based on prior custody credits, the petitioner's state sentence was retroactively satisfied on August 22, 2019, and he was returned to federal custody on October 10, 2019.

At some time prior to August 4, 2020, the petitioner requested that his federal sentence be served concurrently with the state term which would be accomplished by the Bureau of Prisons designating the state institution for service of his federal sentence

under 18 U.S.C. § 3621(b).  Accordingly, the Designation and Sentence Computation Center sent a letter to the Honorable Louise W. Flanagan, the federal district judge that sentenced the petitioner, inquiring as to her position on a retroactive designation.

By Order dated October 7, 2020, Judge Flanagan clarified that she was aware of the petitioner's pending state charges at the time of sentencing; did not intend nor choose for his federal sentence to run concurrently with the anticipated state sentence; and therefore, opposed retroactive designation. [Doc. 16-1].

The petitioner's Sentencing Monitoring Computation Data as of February 12, 2021 establishes that his federal computation began on October 10, 2019, the date he was transferred to exclusive federal custody.  He has been awarded 48 days of jail credit, which clearly represents the time between August 22, 2019, the day after his state sentence was satisfied and October 9, 2019, the day before he was in exclusive federal custody.  His projected release date, via good conduct time, is November 26, 2023.

## The Pleadings

### A. The Petition

The petitioner alleges that the BOP has unlawfully denied him credit for time served in state or federal custody.  The  petitioner maintains that at his federal sentencing hearing, the district judge ordered on  the record that he be given credit for a specified amount of days.[1]  In addition, the petitioner alleges that case law ordered that

---

[1] The undersigned notes that the petitioner's sentencing transcript is filed in his criminal case. A review of that transcript establishes that the district judge made absolutely no mention of a specified period of prior custody credit. Instead, the district judge ended the hearing by stating "[y]ou'll get credit for time served.  See Doc. 41 at 30, 5:18-cr-00375-FL (Eastern District of North Carolina).

3

he be given credit for time spent in state custody against his federal term, even though the state had already given him credit.[2] For relief, the petitioner requests that he be given credit for "all time prior to [November 13, 2018] because he was already in the custody of the United States Marshal Service.

### B. Respondent's Motion and Memorandum

The respondent maintains that this Court lacks jurisdiction to address the matters raised in the petitioner's habeas petition because the sentencing court has already ruled that the petitioner's federal sentence was not intended to run concurrently to his his state sentence nor was his federal sentence to be retroactively designated to run concurrently to the state sentence.

### C. Petitioner's Response

In his response, the petitioner maintains that the federal sentencing court's choice not to run his federal sentence concurrently with his state sentence is a miscarriage of justice. In support of this allegation, the petitioner notes that at his federal sentencing, the district judge stated that he would get credit for time served. In addition, he argues that he was not in the primary custody of the State of North Carolina, but rather was in the custody of the US Marshall as federal detainee in the State of Virginia from October 8, 2018 through April 4, 2019.[3] The petitioner also maintains that the fact that the federal sentencing court did not state whether the sentence would run concurrent or consecutive to his state sentence upon initial sentencing should be sufficient ground that be rewarded the credit he is requesting. Finally, the petitioner

---

[2] The petitioner cites no case law.

[3] When a federal defendant is detained pursuant to a writ of ad prosequendum, the United States Marshall Service designates an appropriate facility for his detention. Apparently the closest and most appropriate facility was in the State of Virginia.

alleges that the "unspecific nature of the words 'get credit for time served'" was a small avoidable error made by a highly competent court official which brought confusion until clarification was requested. [Doc. 19 at 3]. The plaintiff concludes by arguing that this "misguidance and abuse of power, not only promotes a lack of trust for the justice system but also makes that same system in question seem a bit hypocritical on the grounds or guidelines set forth by law." [Id.].

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In

Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable," Id. Therefore, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

## IV.   Analysis

### A. Prior Custody Credit

Following a federal conviction and sentencing, the United States Attorney General, acting through the BOP, is responsible for calculating an inmate's term of confinement, including a determination when the sentence commences. United States v. Wilson, 503 U.S. 329, 334 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b) which provides as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentences commences: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Id.

Under section 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody while awaiting transportation to, or arrives voluntarily to commence service of the sentence at, the official detention facility at which the sentence is to be served." As a general rule, when an inmate is facing sentences imposed by both federal and state authorities, the sovereign that first arrested the inmate retains primary custody over him until that sovereigns imposed sentence is satisfied. United States v. Evans, 159 Fed 3d 908, 912 (4th Cir. 1998). When an inmate is borrowed pursuant to a writ of habeas corpus *ad prosequendum*, the original sovereign has "merely loan[ed] that prisoner to federal authorities" and does not forfeit its primary jurisdiction. Id. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id.

Here, the State of North Carolina did not lose its primary jurisdiction over the petitioner when it lent him to federal authorities pursuant to the writ of habeas corpus *ad prosequendum*. North Carolina maintained primary jurisdiction over the petitioner until October 10, 2019, when he was released to the custody of the United States Marshal to begin serving his federal sentence.

Although a federal prisoner is not entitled to receive credit towards his federal sentence for time that already has been applied to satisfy another sentence, the BOP retains exclusive discretion to designate where a particular prisoner will be incarcerated and to determine whether the prisoner may be deemed to begin serving his federal sentence while he is in state custody and before he arrives at a federal correctional

facility. 18 U.S.C. § 3621(b); Evans, 159 F.3d at 911-12. Therefore, it is apparent that the BOP considered the petitioner's request that his federal sentence be served concurrently with the state term as a request for *nunc pro tunc* designation of the state facility for service of his federal sentence.

18 U.S.C.§ 3621(b) grants the BOP discretion to select the place of a federal prisoner's confinement, stating that the agency may "designate any available penal or correctional facility that meets minimum standards of health and habitability. . ., [regardless of] whether [the facility is] maintained by the Federal Government or otherwise. . ., that the [BOP] determines to be appropriate and suitable." 18 U.S.C. § 3621(b). "The phrase 'or otherwise' refers to the BOP's authority to designate federal prisoners to state prisons." Jefferson v. Berkebile, 688 F.Supp.2d 474, 486 (S.D.W. Va. 2010) (citing Evans, 159 Fed 3d at 911-12). The statute specifically directs the BOP to consider five factors in making this determination:

1. the resources of the facility contemplated;

2. the nature and circumstances of the offense;

3. the history and characteristics of the prisoner;

4. any statement by the court that imposed the sentence—

    (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility is appropriate; and

5. any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.


Accordingly, under the statute, the BOP has the power to order a *nunc pro tunc* designation of a state facility as the place of imprisonment for a federal prisoner, essentially allowing for a retroactive concurrency through which the federal prisoner can receive credit against his federal sentence for time already served in the state facility. Jefferson, 688 F.Supp. 2d at 487 (citing Woodall v. Federal Bureau of Prisons, 432 Fed 3d 235, 245-46 (3d Cir. 2005)).

The BOP's policy on designating a non-federal institution for service of a federal sentence is set forth in BOP Program Statement 5160.05. Normally, designating a non-federal institution for the inmate is done when it is consistent with the Federal sentencing court's intent. ECF No. 19-1 at 78. The sentencing court's intent can be established at the time the sentence is imposed, by way of an order or recommendation, as recorded in a document such as a judgment and order of commitment. Failing that, in inmate can request a *nunc pro tunc* designation, as the petitioner was construed has having done in the instant matter.

As part of determining whether to designate a state institution for service of a federal sentence, it is BOP policy to send a letter to the prisoner's sentencing court, with copies to the United States Attorney's office and US probation office in which the BOP inquires as to the sentencing court's position on applying a retroactive designation. In keeping with this policy, on August 4, 2020, the BOP corresponded directly with the federal judge who originally sentenced the petitioner to determine her position whether the petitioner's federal sentence should run concurrent or consecutive to the North Carolina Sentence imposed after his federal sentencing. [Doc. 16-1 at 5]. In response, the District Judge entered an Order which ruled as follows:

> Upon review and full consideration of the record, the court is opposed to retroactive designation. Although defendant's instant federal sentence was enhanced based on the conduct underlying the state conviction, the federal and state convictions are based on distinct violations of state and federal law. Defendant's offense conduct was violent and egregious, and his criminal history includes convictions for assault inflicting serious injury and common law robbery. Thus, consecutive sentences were necessary to promote respect for the law, provide just punishment for his offenses, and protect the public. Finally, the court was aware of the defendant's pending state charges at the time it imposed the federal sentence, (see PSR ¶ 26 ], and did not choose to run the federal sentence concurrently with the anticipated state sentence.

[Doc. 16-1 at 3].

Accordingly, it is clear that the BOP has no authority to grant the petitioner a *nunc pro tunc* designation, and this Court has no jurisdiction to award the same. While the undersigned recognizes that the district judge in Eastern District of North Carolina concluded the hearing by noting that the petitioner would receive credit for time served, as previously indicated, the calculation of the petitioner's sentence is left to the authority of the BOP.

## IV. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that the respondent's "Motion to Dismiss or for Summary Judgment" **[Doc. 16]** be **GRANTED**, and the petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 **[Doc. 1]** be **DENIED** and **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

Within fourteen days after service of this Report and Recommendation, any party may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the

11

United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: January 10, 2022

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE